DAVID W. COOK and JEAN L. COOK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cook v. Commissioner
Docket No. 5635-76.
United States Tax Court
T.C. Memo 1978-179; 1978 Tax Ct. Memo LEXIS 333; 37 T.C.M. (CCH) 771; T.C.M. (RIA) 780179; May 16, 1978, Filed *333 David W. Cook, pro se. S. Clay Freed and Stewart C. Walz, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $2,406.39 in the Federal income tax of petitioners for the taxable year 1973. Due to concessions the issues for decision are: (1) Whether petitioners established a tax home during the taxable year 1973 which would enable them to deduct expenses for meals, lodging and dry cleaning away from that home pursuant to section 162, Internal Revenue Code of 1954; [1]
(2) Whether petitioners are entitled to deduct expenses incurred pursuant to their ministry for airplane, automobile and telephone expenses; and (3) Whether money contributed to various individuals by petitioners during 1973 constitutes charitable contributions under section 170. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation of facts and exhibits attached thereto are incorporated by this reference. The Reverend David W. Cook (hereinafte referred to as Reverend Cook) and his wife, Jean L. Cook, resided in Nampa, *334 Idaho, at the time their petition was filed in the instant case. They filed a joint Federal income tax return for the taxable year 1973. Reverend Cook is an ordained minister. He graduated from the International Bible College, San Antonio, Texas, where he earned a bachelor's degree in Theology in 1969. His wife, Jean Cook, received a Christian worker's Degree from the International Bible College and is a licensed minister. Following Reverend Cook's graduation petitioners moved to Nampa, Idaho. [2] Mr. Victor Cooke (no family relation to petitioners) provided a house for petitioners where they kept their household belongings and other personal effects. Reverend Cook's mother, Mrs. Irene Cook, also lived in the house. Petitioners were not required to pay rent. Victor Cooke paid all property taxes and major maintenance expenses relating to the house. Mrs. Irene Cook paid all utility bills incidental to the occupancy of the house.Petitioners voluntarily made minor repairs when they were in Nampa, Idaho. Reverend Cook is a traveling evangelist. His ministry is requested throughout the United *335 States and Canada. Any religious organization interested in having petitioners preach before their group would contact Reverend Cook in Nampa where he prepared an itinerary for the upcoming months. After Reverend Cook prepared the itinerary he and his wife would set out traveling across the United States stopping at various churches and religious groups which had invited them to come and preach. During this time Reverend Cook called his mother in Nampa on a weekly basis to ascertain if any inquiries had been made concerning future engagements. [3] Reverend Cook would then contact the religious organization interested in engaging him and agree upon a date when he would preach to that particular group. After completing a number of engagements, which generally took several months, petitioners would return to Nampa and begin preparing another itinerary. During the taxable *336 year 1973 petitioners preached in Arizona, California, Colorado, Idaho, Illinois, Louisiana, Minnesota, Oklahoma, Texas, Utah, Wisconsin, Alberta, Canada, and Saskatchewan, Canada. [4] *337 They generally traveled by automobile; however, on a few occasions petitioners traveled by airplane and bus. Petitioners estimate that they traveled approximately 45,000 miles by automobile during 1973. [5] Reverend Cook made weekly telephone calls to his mother and inquired about possible future engagements as well as business obligations which demanded his immediate attention. Reverend Cook paid for all long distance calls made pursuant to these inquiries. His mother paid for all the personal long distance calls she made during 1973. During the course of Reverend Cook's ministry, from 1969 through 1973, the average annual phone bill for telephone calls made pursuant to his ministry ranged from $500 to $600. In addition to preaching in the United States and Canada, petitioners preached to a number of Christian missions in the Orient as well as participated in various religious workshops during 1973.[6] Petitioners' traveling expenses for their trip to the Orient amounted to $3,396.30 in air fares. The trip was financed by contributions from religious organizations which engaged petitioners to preach and participate in religious activities throughout the United States and Canada. Upon completion of their religious work in the Orient, various religious organizations received letters from the missionaries commending petitioners' ministerial contributions. During 1973 petitioners made charitable contributions to religious organizations in the amount of $957. In addition petitioners contributed money *338 by means of personal checks payable to individuals in the amount of $265 during 1973. Petitioners claimed the following deductions for their taxable year 1973. TRAVEL EXPENSES
Airline fares
$ 4,467.60
Meals & lodging
918.52
Automobile expenses
4,297.50
Dry cleaning *
20.29
Telephone
540.00
TOTAL TRAVEL EXPENSES
$10,243.91
CONTRIBUTIONS
1,293.25
The Commissioner, in his statutory notice of deficiency, determined that petitioners did not establish that any amount of the travel expenses was an ordinary and necessary business expense. Consequently, the Commissioner disallowed the travel expense deduction in its entirety. The Commissioner further determined that petitioners failed to show that their contributions, to the extent of $1,055.25, satisfied the requirements of section 170. OPINION The first issue for decision is whether petitioners established a tax home in Nampa, Idaho, during the taxable year 1973 which would enable them to deduct expenses for meals and lodging while away from home pursuant to section 162. Section 162(a)(2) permits a deduction for travel expenses *339 while away from home in the pursuit of a trade or business. However, three conditions must be satisfied in order to qualify for the deduction: (1) the expenses must have been incurred while petitioners were away from home; (2) the expenses must have been ordinary and necessary; and (3) petitioners must have incurred the expenses in the pursuit of their business. Commissioner v. Flowers,326 U.S. 465 (1946), rehearing denied 326 U.S. 812 (1946). Respondent takes the position that petitioners did not establish a tax home during 1973 and therefore the expenses for meals and lodging incurred by petitioners while they traveled pursuant to their ministry are nondeductible. Petitioners assert that the tax home was clearly established in Nampa, Idaho. The basis of their assertion is that they had sufficient contacts in Nampa to satisfy the first requirement under Flowers as stated above (i.e., listing in the city directory, voter registration, bank accounts, and Idaho driver's licenses). We have consistently held that in order to satisfy the requirements of Flowers and thus obtain a deduction under section 162 petitioners must demonstrate that they incurred substantial continuing living *340 expenses at a permanent place of residence. The deduction of living expenses while away from home is available to mitigate the burden of the taxpayer, who for reasons of his business, is required to maintain two places of abode and thereby incur additional and duplicate living expenses. Bochner v. Commissioner,67 T.C. 824, 828 (1977); Tucker v. Commissioner,55 T.C. 783 786(1971); Kroll v. Commissioner,49 T.C. 557, 562 (1968); James v. United States,308 F.2d 204 (9th Cir. 1962). Petitioners have failed to demonstrate that they incurred "substantial continuing living expenses" during 1973. To the contrary, petitioners paid no rent. Mr. Victor Cooke, who was kind enough to allow petitioners to use the house, paid all property taxes and major maintenance costs for the house. In addition, Mrs. Irene Cook paid for all utility bills during 1973. The only expense incurred by petitioners related to minor maintenance costs. This does not amount to an expense which caused petitioners to incur additional and duplicate expenses while traveling pursuant to their ministry. Likewise, we sustain the Commissioner's disallowance of the expenses for dry cleaning as a deduction under section 162. *341 See Bochner,supra;Benson v. Commissioner,2 T.C. 12 (1943), affd. 146 F.2d 191 (9th Cir. 1944). [7] Therefore, we sustain the Commissioner's disallowance of the expenses for meals, lodging and dry cleaning claimed by petitioners for the reason that petitioners did not establish a tax home for the taxable year 1973. The next issue for decision is whether petitioners are entitled to deduct expenses incurred pursuant to their ministry for airplane fares, automobile expenses, and telephone bills. Petitioners claimed the following amounts as business deductions under section 162: Airplane fares
$4,467.60
Automobile expenses
4,297.50
Phone bills
540.00
Total Claimed
$9,305.10 Petitioners entered the above expenses under the category of travel expenses on their income tax return. Presumably this is the reason respondent takes the position that petitioners have not adequately substantiated such expenses under the requirements of section 274. However, section 274(d) applies to travel expenses while away from home in the pursuit of a trade or business. See sec. 1.274-5(b) (2), Income Tax Regs. *342 We have heretofore decided that petitioners did not establish a "tax home" during 1973 and, therefore, any business expenses incurred by petitioners do not come under the specific provisions of section 162(a)(2) nor the substantiation requirements of section 274(d). Transportation expenses are deductible under section 162 when and to the extent that they are related to the furtherance of a taxpayer's business.In the instant case petitioners traveled approximately 45,000 miles during 1973 by way of automobile. Reverend Cook testified that he and his wife were in pursuit of their business (i.e., evangelism) for approximately 11 months during the taxable year in issue. There can be no question that the majority of these transportation expenses directly related to petitioners' business. Of the $4,467.60 deducted, respondent concedes the deductibility of $3,396.30 representing the airline fare to the Orient. Of the remaining $1,071.30, petitioners offered into evidence canceled checks totaling $272.71 which are payable for transportation costs but thet offered no explanation as to the business purpose of such costs. Accordingly, based upon the entire record, we conclude that 70 percent *343 of the contested airline and bus fares (70 percent of $1,071.30 or $749.91) and 70 percent of the automobile expenses deducted (70 percent of $4,297.50 or $3,008.25) are deductible. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). In addition, petitioners paid approximately $540 for long distance phone bills during 1973. Based on the evidence presented we are convinced that the expense for long distance phone calls was directly related to petitioners' business activity. Reverend Cook, on a weekly basis, called his mother to inquire about possible additions to his itinerary as well as business obligations which needed his immediate attention. Accordingly, we hold that this expense is deductible in its entirety ( $540). The final issue for our decision is whether money contributed to various individuals by petitioners constitutes charitable contributions under section 170. Petitioners claimed $1,293.25 as charitable contributions made during 1973. Respondent concedes that petitioners made charitable contributions in the amount of $957. However, respondent takes the position that the additional $336.25, claimed by petitioners, does not satisfy the requirements of section 170. *344 We agree. Petitioners contributed $265 to individual ministers. These contributions were made by checks payable to the ministers. While petitioners may have intended the contributions for the benefit of the religious organizations which the ministers represented, there is no evidence before us which would show that $265the was ever under the direct control of such organizations. Winn v. Commissioner,67 T.C. 499 (1976). Therefore, we sustain the Commissioner's disallowance of a charitable deduction to the extent of $265. In addition we sustain the Commissioner's disallowance, to the extent of the remaining balance ($71.25) for the reason that petitioners have failed to present any evidence in support of its charitable character. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioners resided in the Nampa area prior to attending the International Bible College.↩
3. Mrs. Irene Cook performed various secretarial functions for petitioners while they were away. They included providing information about petitioners' preaching engagements and mailing religious material to those interested in Reverend Cook's ministry. Petitioners did not pay Mrs. Cook for the services she performed.↩
4. Petitioners were present in the house in Nampa, Idaho, for approximately one month in 1973. However, they maintained a banking account at a local bank in Nampa and were listed in the Nampa city directory. In addition petitioners were registered voters in Nampa and held Idaho driver's licenses. 5. The estimate is based on gasoline receipts and a diary maintained by Reverend Cook. The diary included the date and place of each preaching engagement made during 1973 (329 engagements). The receipts reflected the date and place of purchase as well as the amount of purchase.↩
6. From October 10, 1973, to the end of 1973 petitioners preached in Japan, Korea, Hong Kong, the Philippines and Thailand.↩
*. The dry cleaning expenses relate to normal business suits owned by Reverend Cook which were appropriate for personal use.↩
7. The dry cleaning expenses related to standard business suits which could be worn for personal use.↩